UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EASTPOINTE DWC, LLC d/b/a
DETROIT WING COMPANY,

      Plaintiff,

v.

WING SNOB INC., and
WING SNOB FRANCHISING, LLC,

      Defendants.
_____/

No. 19-13768

Hon. Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION [10]**

Plaintiff Eastpointe DWC, LLC d/b/a Detroit Wing Company ("DWC") filed suit against Defendants Wing Snob Inc. and Wing Snob Franchising, LLC (collectively referred to as "Wing Snob"), bringing claims of trademark and trade dress infringement, unfair competition, and false advertising under federal and state law as well as a copyright infringement claim.  The matter is now before the Court on Plaintiff's motion for a preliminary injunction.  (Dkt. 10.)  Defendant opposes the motion.  (Dkt. 20.)  Plaintiff has filed a reply.  (Dkt. 22.)  Plaintiff also filed a supplemental brief, (dkt. 33), which Defendant has responded to, (dkt. 35).  The Court finds that the facts and legal arguments are adequately presented in the motions and briefs and that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Plaintiff's motion will be resolved as submitted.  For the reasons discussed below, the Court DENIES Plaintiff's motion for a preliminary injunction.

1

**I.      Background**

Plaintiff opened its first restaurant, specializing in chicken wings, in the Detroit area in 2015. (Dkt. 10-2.) Wing Snob's owners, Brian Shunia and Jack Mashini, approached Plaintiff regarding whether it would consider selling franchises. They were given a tour by Gus Malliaras, but Plaintiff indicated it was not interested in selling franchises and declined the offer. After finding an old pizza shop in Livonia, Mr. Shunia once again approached and asked Plaintiff if it would be interested in selling a franchise, but Plaintiff declined. Several weeks later, Mr. Shunia contacted Plaintiff for a third time. According to Plaintiff, Mr. Shunia stated that he signed a lease and was moving forward with opening a similarly-themed, chicken wing restaurant. He asked Plaintiff if it would be its consultant, but Plaintiff refused to help him. According to Mr. Malliaras's affidavit, "after [he] declined to assist Mr. Shunia, he told [him] he was just going to open a similar chicken wing restaurant." *See id.* Mr. Malliaras understood this to mean that "he was going to intentionally copy [Plaintiff]'s business." *Id.*

After Defendants opened their first location, Mr. Malliaras visited it with his marketing agent. (*See id.*; *see also* dkt. 10-3.) They state that they noticed the same colors, similar logos, and similar horizontal wood slats on the wall. They further state that they heard Defendants' owner tell a customer that all of Defendants' sauces were made from scratch, but after the customer left, Mr. Shunia admitted that he does not make the sauces from scratch but rather uses bottled sauces. Plaintiff also states that they noticed that Defendants had copied its menus, its menu's trade dress, and its online ordering method, but decided not to sue Defendant at the time.

2

Defendants continued to expand, however, and Plaintiff alleges that each new location was geographically closer to a DWC location, more similar to the trade dress, and more aggressive in displaying the infringing logos. Plaintiff also alleges that some customers were confused about whether Plaintiff was affiliated with Defendant. In support of this assertion, Plaintiff cites to a tweet asking, "So wing snob and Detroit Wing Company is the same thing?" Plaintiff also cites to a message on its website from a customer who appeared confused. Attached to Plaintiff's reply brief is a statement from one of its employees indicating there were numerous instances during which food delivery workers came to Plaintiff's restaurant and asked for food orders that were made for Defendant's restaurants. (Dkt. 22-3.) Another employee interacted with two customers who expressed confusion between the two. (Dkt. 22-4.)

Plaintiff also states that in December 2019, Mr. Mashini contacted Plaintiff's social media manager and asked him to promote Defendants in the same way he promotes Plaintiff.[1] Plaintiff alleges that Defendants' social media presence is similar to its social media presence. According to an article published in Crain's Detroit Business, Defendant "plans to take its restaurant count to 36 across North America, with 16 in Michigan." Further, Defendant "is in rapid expansion mode with plans to open more than 30 locations in Michigan and beyond over the next two years" and that Defendant is receiving "an average of 15 franchise inquiries per week."

Plaintiff now moves for a preliminary injunction. More specifically, Plaintiff asks the Court to enter an order directing Defendants to: remove and destroy all signage,

---

[1] Defendants state that it is disingenuous to refer to this individual as Plaintiff's social media manager when he actively promotes hundreds of Metro Detroit restaurants.

3

merchandise, advertising or other Wing Snob items that infringe upon Detroit Wing's chicken logo, which is also protected with a U.S. copyright; remove all Wing Snob signage that displays its infringing logos; remove or re-stain all interior wood panel décor that infringes on Detroit Wing's trade dress; change its color scheme from the currently infringing color scheme that copies Detroit Wing's black/orange/white color scheme; and cease and desist from its current franchising activities and from any further franchising activities until this matter gets resolved.

The logos at issue are the following:

Plaintiff's circular logo:      Defendants' circular logo:



Plaintiff's chicken logo:      Defendants' chicken logo:



4

Plaintiff's trademark registration for its circular logo was filed on October 24, 2019, and its copyright in its chicken logo was just registered on December 9, 2019, (dkt. 3-1).

The owner of Defendants, Mr. Shunia, has presented his affidavit, attesting in part that although he met with Mr. Malliaras and toured his restaurant, he "never represented to him an intent to copy his business in any way." (Dkt. 20-2.) He also states that the current four Wing Snob locations are in rented spaces and therefore Defendants did not design the exterior. He also attests that the chicken art logo was designed by a third party prior to Plaintiff filing its copyright application, and that Defendants in fact had no prior knowledge of this chicken logo until the filing of this lawsuit. Mr. Shunia also states that an individual by the name of John Tiley designed the Wing Snob circular logo. Mr. Shunia notes the differences between the logos as well as the interior décor of the restaurants.

## II.  Legal Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The Sixth Circuit has held that a court must consider the following four factors when deciding whether to issue a preliminary injunction: "1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits. 2. Whether the movant has shown irreparable injury. 3. Whether the preliminary injunction could harm third parties. 4. Whether the public interest would be served by issuing the preliminary injunction." *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir 1985) (internal quotation marks and citation omitted). These are "factors

to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "In general, the likelihood of success that need to be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Id.* (internal quotation marks and citation omitted).

### III. Analysis

Plaintiff moves for a preliminary injunction on its trademark and trade dress infringement claims under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and its copyright infringement claim under the Copyright Act, 17 U.S.C. §§ 101-1401. Defendants argue Plaintiff has not shown it is entitled to injunctive relief on any of its claims.

#### A. Trade Dress and Trademark Infringement Claims

##### 1. Likelihood of Success on the Merits

Plaintiff combines the discussion of its trade dress and trademark infringement claims. However, as Defendants note, while there is some overlap in the analysis, there is a threshold issue relevant to the trade dress infringement claim—whether the trade dress is protectable. More specifically, to recover for trade dress infringement, a plaintiff must prove: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). "The first two elements are the requirements for protectability, and the third element is the standard for evaluating infringement." *Id.* Liability on the trademark infringement claim also depends on "whether the defendant's use of the disputed mark

is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997).

### a. Protectability of Trade Dress

"Trade dress is the total image of the product, including all its identifying characteristics such as size, shape, package, and sale techniques, which make it distinguishable from the other products in the market." *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.*, No. 10-15174, 2013 U.S. Dist. LEXIS 10130, at *7 (E.D Mich. Jan. 25, 2013) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)). Distinctiveness of trade dress may be inherent or demonstrated by secondary meaning. *Abercrombie & Fitch Stores*, 280 F.3d at 635. Trade dress is inherently distinctive when its "'intrinsic nature serves to identify a particular source.'" *Id.* at 635 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)). It acquires secondary meaning when, "'in the minds of the public, the primary significance of a mark or dress is to identify the source of the product rather than the product itself.'" *Id.* Under a test formulated by the Second Circuit, trade dress is inherently distinctive when it is "arbitrary ('Lucky Strike cigarettes'), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent)." *Id.* at 635 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976)). However, trade dress that is descriptive or generic is not inherently distinctive. *Id.* at 635-36. Although descriptive trade dress receives protection if it acquires secondary meaning, generic trade dress cannot. *Id.* While the Supreme Court held that this test regarding distinctiveness applies to product packaging trade dress, the "interior décor category fits awkwardly into the classifications of trade

dress law, constituting either product packaging or a 'tertium quid' akin to product packaging." *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 70 (S.D.N.Y. 2003).

In describing its trade dress, in both its complaint and the motion before the Court, Plaintiff focuses on the "exterior design for its restaurants—with clean lines, ledgestone accents, and its circular logo—horizontal rough wood paneling inside its restaurants, and a black/orange/white color scheme for its restaurant interiors and menus." (*See* dkt. 3, PgID 9-10.) Plaintiff argues that several elements of its design, including the circular logo and the chicken logo, are arbitrary, and thus the overall effect of these elements is inherently distinctive. Defendants note, however, that the color scheme they use is different because they include gray in addition to black, orange, and white. Also, the paneling used by Defendants is a different color and thinner than the paneling in Plaintiff's interior. Defendants also note that they no longer use the chicken logo. In light of this, in its reply, Plaintiff focuses instead on the orange word art that is on the walls of the Wing Snob's restaurants. Plaintiff also asserts that the menu items at Plaintiff's and Defendants' restaurants are similar.

In *Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130, at *11-12, the court drew a "distinction between arbitrarily selecting design elements that result in a unique and distinctive trade dress and arbitrarily selecting elements that result in nothing more than a generic design." The court found the trade dress at issue there fell in the latter category due in part to a lack of evidence that other restaurants did not use the same elements and that customers exclusively associated those elements and menu items with the plaintiff. *See id.* at *10. The court found that the plaintiff had failed to establish

distinctiveness because "[w]ithout the use of [the plaintiff]'s name and logo within the design or on the menu, there is nothing that would alert the average consumer that they are in a [plaintiff's] restaurant." *See id.* at *12.

Here, Defendants have presented evidence that many restaurants that serve chicken use circles and/or images of chicken in their logos. (*See* dkt. 20-5.) Also, Plaintiff has not presented evidence that customers exclusively associate the elements of its design with its restaurants. Based on the record before the Court, it appears that, like in *Happy's*, without the use of Plaintiff's name and logos, there is nothing that would alert customers that they are in Plaintiff's restaurants. Thus, the probability is low that Plaintiff can establish distinctiveness.

Nor has Plaintiff established that its trade dress has acquired secondary meaning. Relevant factors to the question of whether secondary meaning exists in a trade dress are: "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying." *See General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006). Plaintiff states that it has promoted its trademarks and trade dress extensively. And it also states it has evidence of intentional copying--more specifically, the statement allegedly made by Mr. Shunia that he was going to copy DWC. However, Mr. Shunia disputes making this remark. Moreover, Defendants have submitted the affidavit of Mr. Tiley, who states that while Mr. Shunia suggested using the "hunger colors," he otherwise chose the name of Defendants' restaurants and color scheme and designed the circular logo. (Dkt. 35-2.) In sum, Plaintiff has not made a strong showing

9

of a likelihood of success in proving that its trade dress has acquired secondary meaning.

Thus, even though Defendants do not argue that Plaintiff's trade dress is not primarily nonfunctional, the Court finds that Plaintiff has not made a strong showing of a likelihood of success in establishing that its trade dress is protectable. And even if Plaintiff's trade dress is protectable, there must also be a likelihood of customer confusion.

### b. Customer Confusion

In examining the likelihood of customer confusion for both trademark and trade dress infringement claims, the Court weighs the following factors: 1) the strength of the plaintiff's mark (or trade dress), 2) relatedness of the goods, 3) similarity of the marks (or trade dress), 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) defendant's intent in selecting the mark (or trade dress), and 8) likelihood of expansion of the product lines. *See Frisch's Rests., Inc. v. Elby's Big Boy of Stuebenville, Inc.*, 670 F.2d 642, 648 (6th Cir 1982); *Abercrombie & Fitch Stores*, 280 F.3d at 635. "[T]hese factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. . . . The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 280 (internal quotation marks and citation omitted).

Plaintiff's trade dress and trademarks are not strong. A trademark that has been registered for five or more years is considered strong and worthy of full protection. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988). Here, the trademark

registration for Plaintiff's circular logo was just filed on October 24, 2019 and it has not yet achieved federal registration status.

With regard to similarity of the trade dress and trademarks, the circular logos are very different. Plaintiff's circular log states "DWC" in orange, while Defendants' circular logo spells out the words "Wing Snob" in white. Plaintiff's logo's background is black, while Defendants' logo's background is mostly gray. A review of the pictures also reveals differences in the wood paneling and overall look of the interior of the restaurants. Nor is Defendants' use of word art particularly similar. Plaintiff only has word art within the chicken in its chicken logo with a black background. Defendants no longer use their chicken logo and have the word art covering the entire surface of the wall on an orange background.

As evidence of actual confusion, Plaintiff submits affidavits of employees, stating that food delivery workers and customers have expressed confusion. Courts, however, have found similar employee statements insufficient to establish the likelihood of confusion element. *See Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130 at *14-15. No particularity regarding the confusion is provided—the employees do not indicate if the individuals were confused based on the similarities in décor, logos, menu, or location of the two restaurants. *See id.* Plaintiff also points to several social media posts where customers appeared to be confused, thinking there was a DWC at a location where there was actually a Wing Snob. (*See* dkt. 36) However, these posts also lack particularity.

A number of factors are neutral in this case. For example, while the goods are related because both Plaintiff's and Defendants' restaurants sell fried chicken and

11

wings, Defendants assert that to distinguish their products from an already-crowded field of restaurants that sell similar products, they also sell chicken sliders and cauliflower wings. And with regard to the likely degree of purchaser care, "the standard used by the courts is the typical buyer exercising ordinary caution." *See Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991). Also, the evidence is inconclusive regarding Defendants' intent in selecting their trade dress and logos.

The factors that weigh in favor of Plaintiff are only the likelihood of expansion of the product lines and the marketing channels used. But at least one court in this district has found that the "the mere fact that two competing restaurants in the same geographic area utilize the same marketing channels and employ the same companies to market their product is insufficient." *See Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130, at *14-15.

In sum, the strength of Plaintiff's trade dress and trademarks and the similarities between the Plaintiff's and Defendants' trade dress and trademarks weigh against a likelihood of confusion. Moreover, the evidence of customer confusion lacks particularity. Thus, a balancing of all of the relevant factors leads the Court to conclude that Plaintiff has failed to establish a strong likelihood of success in proving its trade dress and trademark infringement claims.

## 2. Other Factors

Not only has Plaintiff not shown a strong likelihood of success on the merits of its claims, the other factors also weigh against injunctive relief. Plaintiff notes that "a presumption of irreparable harm attaches once the moving party demonstrates a

probability of success on the merits," see *Pita Delight, Inc. v. Salami*, 24 F. Supp. 2d 795, 799 (E.D. Mich 1998), but the Court has found that Plaintiff has failed to demonstrate this probability. The only other irreparable injury Plaintiff points to is a loss of customer goodwill. The Court finds that any such loss does not outweigh the harm to Defendants. Nor is a preliminary injunction necessary to serve the public interest. Thus, with the current record, the Court declines to grant Plaintiff injunctive relief on the basis of its trade dress or trademark infringement claims.

### B. Copyright Infringement Claim

#### 1. Likelihood of Success on the Merits

To establish a claim of copyright infringement, Plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The first element tests the originality and non-functionality of the work and is presumptively established by the copyright registration, and the second element tests whether copying occurred and whether the portions of the work copied were entitled to copyright protection. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). A plaintiff may show copying "either by direct evidence of copying, or by proof that Defendants had access to the copyrighted work and that the copyrighted work and the infringement work are substantially similar." *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1031 (E.D. Mich. 1998), *aff'd,* 229 F.3d 1155 (6th Cir. 2000) (internal quotation marks and citation omitted).

Here, there is no dispute that Plaintiff owns a valid copyright in its chicken logo. However, Defendants argue there is no evidence they copied this logo. Mr. Shunia's

alleged comment regarding copying Plaintiff's business is in dispute, as discussed above. Moreover, a general comment that Defendants would open a business similar to Plaintiff's is not direct evidence that Defendants copied Plaintiff's chicken logo. And while the copyrighted work and the infringing work are similar, Defendants argue that they did not have access to the copyrighted work. Defendants note that while Plaintiff states its chicken logo was widely advertised, there is no evidence in the record to substantiate this claim. Mr. Shunia has testified that he lacked knowledge of the chicken logo until the filing of the complaint in this case, and Defendants have presented evidence that their logo was designed by a third party. Regardless of Plaintiff's likelihood of success on its copyright infringement claim, however, the Court finds that injunctive relief is not warranted on this claim after a consideration of the remaining factors.

### 2. Other Factors

Defendants state that the only time they used the allegedly infringing chicken logo was for the creation of one style of t-shirt that was only on sale for a few weeks. Because the copyrighted logo is no longer in use, Plaintiff is not suffering irreparable harm. Therefore, this factor weighs heavily against the issuance of a preliminary injunction. For the same reason, the balance of harms weighs in favor of Defendants, and injunctive relief will not benefit the public interest. In sum, the Court will not issue a preliminary injunction on the basis of Plaintiff's copyright infringement claim.

## IV. Conclusion

For the above-stated reasons, Plaintiff's motion for a preliminary injunction is DENIED.

SO ORDERED.

                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: June 22, 2020

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 22, 2020, by electronic and/or ordinary mail.

                                        s/Lisa Bartlett
                                        Case Manager