UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

EASTPOINTE DWC, LLC, d/b/a
DETROIT WING COMPANY, a
Michigan limited liability company,

       Plaintiff,

v.

WING SNOB INC., a Michigan
corporation, and WING SNOB
FRANCHISING, LLC, a Michigan
limited liability company,

       Defendants.

Case No. 2:19-cv-13768
Hon. Nancy G. Edmunds
Mag. Judge R. Steven Whalen

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 56(a)**

Defendants, Wing Snob Inc. and Wing Snob Franchising, LLC ("Defendants" or "Wing Snob"), by and through their attorneys, hereby file their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 12 (b)(6) and Fed. R. Civ. P. 56(a), and in support thereof state as follows:

1.    To avoid repetition, Defendants incorporate the facts set forth in their accompanying Brief in Support, prior preliminary injunctive response briefing (**ECF No. 20, PageID.168-169**). The facts at issue largely remain unchanged.

2.    Consistent with this Honorable Court's February 4, 2021 Order, Defendants move for Summary Judgment against each of Plaintiff's six counts

herein and below.

3. Defendants move this Court for Summary Judgment on Counts I & IV of Plaintiff's Complaint, titled "Trademark Infringement Under 15 U.S.C. 1125(a)" and "Trademark Infringement and Unfair Competition Under Michigan Common Law" for the following reasons:

a. Plaintiff cannot demonstrate that its trademarks are substantially similar to Defendants' trademarks, nor can it demonstrate that its trade dress is protectable and/or likely to cause customer confusion in the marketplace. *See* e.g. *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). Thus, dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

b. Plaintiff is unable to support its claim in evidence, and to the extent admissible evidence does exist, the factual record demonstrates there is no genuine dispute of material fact, thereby warranting dismissal pursuant to Fed. R. Civ. P. 56(a).

4. Defendants also move this Court for Summary Judgment on Count II of Plaintiff's Complaint, titled "Unfair Competition in Violation of Section 43(a) of

the Lanham Act," for the following reasons:

    a.  There is considerable overlap with the trademark infringement analysis and standard, as described throughout Defendants' briefing in support, the Court's Order denying Plaintiff's Motion for Preliminary Injunction, and as provided for by established case law, and because Plaintiff again cannot demonstrate that its trade dress is protectable and/or likely to cause customer confusion in the marketplace. *See e.g. Tumblebus Inc. v. Cramer*, 399 F.3d 754, 761 (6th Cir. 2005); *Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604-605 (6th Cir. 1991). Thus, dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

    b.  Plaintiff is unable to support its claim in evidence, and to the extent admissible evidence does exist, the factual record demonstrates there is no genuine dispute of material fact, thereby warranting dismissal pursuant to Fed. R. Civ. P. 56(a).

5.    Defendants move this Court for Summary Judgment on Count III of Plaintiff's Complaint, titled "False Advertising in Violation of Section 43(a) of the Lanham Act," for the following reasons:

    a.  Plaintiff lacks standing to bring its claim, and otherwise failed to

sufficiently plead its claim, in violation of Fed. R. Civ. P. 12(b)(6) and binding precedent, and consequently dismissal is appropriate because Plaintiff has failed to state a claim upon which relief can be granted.

b. Plaintiff is unable to support its claim in evidence, and to the extent admissible evidence does exist, the factual record demonstrates there is no genuine dispute of material fact, thereby warranting dismissal pursuant to Fed. R. Civ. P. 56(a).

6.      Defendants also move this Court for Summary Judgment on Count V of Plaintiff's Complaint, titled "Unfair and Deceptive Trade Practices Under Michigan Consumer Protection Act, MCL § 445.901 *et al*." ("MCPA"), for the following reasons:

a. Plaintiff's claim is expressly prohibited under existing law given MCL § 445.904(1), which exempts Defendants and many other businesses from the MCPA, because the alleged conduct at issue is, or would be, sanctioned by state and federal laws. *See Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465; 597 N.W.2d 28 (1999); *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 213; 732 N.W.2d 514 (2007). Thus, dismissal is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to state a claim upon which relief can be granted.

b. Plaintiff is unable to support its claim in evidence, and to the extent

admissible evidence does exist, the factual record demonstrates there is no genuine dispute of material fact, thereby warranting dismissal pursuant to Fed. R. Civ. P. 56(a).

7.    Defendants lastly move this Court for Summary Judgment on Count VI of Plaintiff's Complaint, titled "Copyright Infringement," for the following reasons:

a.  Plaintiff is unable to support its claim in evidence, and to the extent admissible evidence does exist, the factual record demonstrates there is no genuine dispute of material fact, thereby warranting dismissal pursuant to Fed. R. Civ. P. 56(a).

8.    Pursuant to LR 7.1(a), Defendants sought Plaintiff's concurrence regarding the relief requested in their Motion on February 1, 2021 and on February 8, 2021. Defendants' counsel sent Plaintiff's counsel emails describing the nature of this Motion and its legal bases. Plaintiff does not concur in the relief requested, thereby necessitating the present motion filing.

WHEREFORE, Defendants respectfully request that this Honorable Court enter an order dismissing Plaintiff's Complaint for the reasons set forth herein and in the accompanying Brief in Support of Defendants' Motion. Defendants further request this Honorable Court enter an order awarding them costs, attorney fees, and all other equitable relief this Court deems just and proper, given the baseless claims and strong defenses at issue in this case.

Respectfully submitted,

**ROSSMAN, P.C.**
*Attorneys for Defendants*

By:    /s/ Linda J. Roelans
         Mark C. Rossman (P63034)
         Linda J. Roelans (P82818)
         Jacob M. Campbell (P83900)
         2145 Crooks Road, Suite 220
         Troy, Michigan 48084
         Telephone: 248.385.5481
         Facsimile: 248.480.4936
         mark@rossmanpc.com
         linda@rossmanpc.com
         jacob@rossmanpc.com

Dated:  February 11, 2021

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

EASTPOINTE DWC, LLC, d/b/a             Case No. 2:19-cv-13768
DETROIT WING COMPANY, a               Hon. Nancy G. Edmunds
Michigan limited liability company,   Mag. Judge R. Steven Whalen

     Plaintiff,

v.

WING SNOB INC., a Michigan
corporation, and WING SNOB
FRANCHISING, LLC, a Michigan
limited liability company,

     Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT PURSUANT
TO FED. R. CIV. P. 12(b)(6) AND FED. R. CIV. P. 56(a)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………..iv

INDEX OF EXHIBITS ……………………………………………………..vii

ISSUES PRESENTED …………………………………………………..viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ……………………x

I. INTRODUCTION …………………………………………………………1

II. FACTUAL BACKGROUND …………………………………………...4

III. LEGAL STANDARD …………………………………………………5

IV. ARGUMENT …………………………………………………………..5

   1. Trademark and Trade Dress Infringement Claims (Counts I & IV)…...……5

      a.  Applicable Test ………………….…………………….………...5

      b.  Plaintiff cannot demonstrate distinctiveness or non-functionality…........6

      c.  Plaintiff cannot demonstrate likelihood of confusion ……………..……..9

   2. Plaintiff's Unfair Competition Claim (Count II) …………………….……20

      a.  Applicable Test………………………………………….……..……20

      b.  The analysis is the same, and there is no "unfair competition." ……20

   3. Section 43(a) Lanham Act False Advertising Claim (Count III)…………..21

      a.  Plaintiff lacks standing to assert its false advertising claim…………..21

      b.  Plaintiff has insufficiently pleaded the five required legal elements…21

i

c. Plaintiff cannot establish any of the required elements …………...…....24

4. MCPA False Advertising Claim (Count V)………………………..…..28

a. Plaintiff's MCPA claim is precluded by law, and Plaintiff otherwise lacks standing to assert this claim …………………………..……...28

b. The factual record is devoid of support for Plaintiff's MCPA claim...30

5. Copyright Infringement Claim (Count VI)……………………………...30

a. Defendants did not copy Plaintiff's "chicken art" copyright ………..30

i. Direct evidence of copying does not exist ……………………32

ii. Circumstantial evidence of copying does not exist …..……….32

iii. The "chicken logos" are not substantially similar ………..…..34

V. CONCLUSION …………………………………………………………...34

# TABLE OF AUTHORITIES

## Cases

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*
  280 F.3d 619, (6th Cir. 2002) …………………………………….....7, 9, 11

*Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*
  237 F. Supp. 3d 644 (E.D. Mich. 2017) ………………………………..21-22

*Am. Council of Certified Podiatric Physicians & Surgeons v.*
*Am. Bd. of Podiatric Surgery, Inc.* 185 F.3d 606 (6th Cir. 1992)………......23, 25

*Bird v. Parsons*
  289 F.3d 865 (6th Cir. 2002) …………………………………………….20

*Carson v. Here's Johnny Portable Toilets, Inc.*
  698 F.2d 831 (6th Cir. 1983) …………………………………………...6

*Columbia Natural Resources, Inc. v. Tatum*
  58 F.3d 1101 (6th Cir. 1995) …………………………………………...5

*Continental Laboratory Products, Inc. v. Medax Intern., Inc.*
  114 F. Supp. 2d 992 (S.D. Cal. 2000) ………………………………………16

*Cosmetic Dermatology and Vein Ctrs. of Downriver, P.C. v.*
*New Faces Skin Care Ctrs., LTD.*
  91 F. Supp. 2d 1045 (E.D. Mich. 2000) …………………………10, 12, 30

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*
  109 F.3d 275 (6th Cir. 1997) ……………………………………..6, 10, 12, 14

*Deere & Co. v. Fimco Inc.*
  302 F. Supp. 3d 837 (W.D. Ky. 2017) …………………………………17-18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
  499 U.S. 340 (1991) ………………………………………………………..31

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*
  670 F.2d 642 (6th Cir. 1982) …………………………………………..6, 10

*Grubbs v. Sheakley Grp., Inc.*
807 F.3d 785 (6th Cir. 2015) ……………………………………………25

*Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.*
2013 U.S. Dist. LEXIS 10130 (E.D. Mich. 2013) ………………………...7-8

*Homeowners Grp., Inc. v. Home Mktg. Specialists*
931 F.2d 1100 (6th Cir. 1991) …………………………………………...17

*La.-Pacific Corp. v. James Hardie Bldg. Prods.*
928 F.3d 514 (6th Cir. 2019) ……………………………………………27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
572 U.S. 118 (2014) ……………………………………………………21-22

*Liss v. Lewiston-Richards, Inc.*
478 Mich. 203 (2007) ……………………………………………………29

*Luigino's, Inc. v. Stouffer Corp.*
170 F.3d 827 (8th Cir. 1999) ……………………………………………14

*Marketing Displays, Inc. v. TrafFix Devices, Inc.*
200 F.3d 929 (6th Cir. 2000) ……………………………………………..9

*Mattel, Inc. v. Walking Mountain Productions*
2004 WL 145100 (C.D. Cal. 2004) ……………………………………...35

*Mazer v. Stein*
347 U.S. 201(1954) ……………………………………………………...34

*McKeon Prods. v. Flents Prods Co.*
2002 U.S. Dist. LEXIS 27123 (E.D. Mich. 2003) …………………………11

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp*
361 F.3d 312 (6th Cir. 2004) ……………………………………………32

*Pack v. Martin*
174 F. App'x 256 (6th Cir. 2006) ………………………………………….5

iv

*Peter v. Stryker Orthopaedics, Inc.*
 581 F. Supp. 2d 813 (E.D. Mich. 2008) ……………………………………29

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*
 2016 U.S. Dist. LEXIS 193339 (E.D. Mich. 2016) ………………………...29

*Smith v. Globe Life Ins. Co.*
 460 Mich. 446 (1999) …………………………………………………………28

*Sun Banks, Inc. v. Sun Fed. Savs. & Loan*
 651 F.2d 311 (5th Cir. 1981) …………………………………………………17

*Two Pesos, Inc. v. Taco Cabana*, Inc.
 505 U.S. 763 (1992) …………………………………………………………..20

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*
 529 U.S. 205 (2000) …………………………………………………………6

*Warner Bros. v. ABC.*
 720 F.2d 231 (2d Cir. 1983) …………………………………………………..19

*Wilcom Pty. Ltd. v. Endless Visions*
 128 F. Supp. 2d 1027 (E.D. Mich. 1998) …………………………………...31

*Wynn Oil Co. v. Thomas*
 839 F.2d 1183 (6th Cir. 1988) ……………………………………………..11, 16

*Wysong Corp. v. APN, Inc.*
 889 F.3d 267 (6th Cir. 2018) ………………………………………………25-26

## <u>Other Authorities</u>

Fed. R. Civ. P. 12 …………………………………………………………*in passim*

Fed. R. Civ. P. 56 …………………………………………………………*in passim*

15 U.S.C. § 45 …………………………………………………………………29

15 U.S.C. § 52 …………………………………………………………………29

15 U.S.C. § 55 ……………………………………………………………….29

15 U.S.C. § 1117(a) ………………………………………………………35

15 U.S.C. § 1125(a) ……………………………………………………*in passim*

21 U.S.C. § 378 …………………………………………………………..29

MCL § 289.5101 *et seq.* ………………………………………………….29

MCL § 445.901 *et al.* ………………………………………….......1, 28

MCL § 445.902(d) ………………………………………………………..30

MCL § 445.903 …………………………………………………………...28

MCL § 445.904(1) ……………………………………………………..28

## <u>INDEX OF EXHIBITS</u>

**Exhibit 1**, *Dep. Tiley*

**Exhibit 2**, *Dep. Dagher*

**Exhibit 3**, *Safe Harbor Letter, 7/28/2020*

**Exhibit 4**, *Examples re: Consumer Differentiation*

**Exhibit 5**, *Emails from DWC Managers*

**Exhibit 6**, *Dep. Cardasis*

**Exhibit 7**, *DWC's First RFP Responses*

**Exhibit 8**, *Social Media Post*

**Exhibit 9**, *DWC's First Rog Responses*

**Exhibit 10**, *"Chicken Art" Sweatshirt*

## ISSUES PRESENTED

1. Is summary judgment warranted to dispose of Plaintiff's trademark infringement and trade dress infringement claims, under both federal and state law, where the existing factual evidence establishes that the trademarks and trade dress at issue are not substantially similar and are not causing confusion?

**DEFENDANTS ANSWER: YES**

2. Is summary judgment warranted to dispose of Plaintiff's Unfair Competition Claim Under the Lanham Act § 43(a) when the test is the same, Plaintiff cannot demonstrate a likelihood of confusion and, consequently, there is no "unfair competition?"

**DEFENDANTS ANSWER: YES**

3. Is summary judgment warranted to dispose of Plaintiff's Lanham Act false advertising claim, where Plaintiff lacks standing to bring such a claim, has failed to plead the requisite elements of such a claim, has otherwise failed to support its claim with evidence, and where the existing evidence demonstrates the lack of a material factual dispute?

**DEFENDANTS ANSWER: YES**

4. Is summary judgment warranted to dispose of Plaintiff's Michigan Consumer Protection Act ("MCPA") false advertising claim, where such a claim is exempted by statute and related case law, Plaintiff lacks standing to bring its

claim, Plaintiff has failed to support its claim with evidence, and where the existing evidence demonstrates the lack of a material factual dispute?

**DEFENDANTS ANSWER: YES**

5. Is summary judgment warranted to dispose of Plaintiff's copyright infringement claim where Plaintiff cannot establish direct, circumstantial, or intentional copyright infringement, and where the existing factual record demonstrates that Defendants did not have access to Plaintiff's sole copyright, where Plaintiff cannot otherwise demonstrate evidence of infringement, and where the allegedly infringing copyright is not substantially similar?

**DEFENDANTS ANSWER: YES**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

### **Trademark and Trade Dress Infringement**

*Frisch's Restaurant Inc. v. Elby's Big Boy of Streubenville, Inc.*
    670 F.2d 642 (6th Cir. 1982)

*Cosmetic Dermatology and Vein Ctrs. of Downriver, P.C. v. New Faces Skin Care Ctrs., LTD.*
    91 F. Supp. 2d 1045 (E.D. Mich. 2000)

### **Lanham Act False Advertising**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014)

*Grubbs v. Sheakley Grp.*, Inc.
    807 F.3d 785 (6th Cir. 2015)

### **Michigan Consumer Protection Act ("MCPA") False Advertising**

*Smith v. Globe Life Ins. Co.*
    460 Mich. 446; 597 N.W.2d 28 (1999)

*Liss v. Lewiston-Richards, Inc.*
    478 Mich. 203; 732 N.W.2d 514 (2007)

MCL § 445.904(1)

### **Copyright Infringement**

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*
    499 U.S. 340 (1991)

*Murray Hill Publ'ns, Inc v Twentieth Century Fox Film Corp*.
    361 F.3d 312 (6th Cir. 2004)

# I.  **INTRODUCTION**

The present litigation is ripe for summary judgment, and Plaintiff's claims fail as a matter of law for the following reasons:

- ➢ **Counts I & IV: Trademark Infringement Under 15 U.S.C. § 1125(a)** – Dismissal is warranted pursuant to Fed. R. Civ. P. 56(a) because Plaintiff has not and cannot demonstrate that its marks and trade dress are protectible, and even if it could, there is no evidence of copying and the marks and trade dress are not substantially similar. The self-serving hearsay testimony of Plaintiff and his store managers related to alleged confusion lacks particularity and cannot be substantiated. Count 4 must be dismissed because the legal standards applicable in state court are the same.

- ➢ **Count II: Unfair Competition in Violation of Section 43(a) of the Lanham Act** – Dismissal is warranted pursuant to Fed. R. Civ. P. 56(a) because the marks and trade dress of Plaintiff and Defendants are substantially different, and there is no reliable evidence of confusion stated with particularity.

- ➢ **Count III: False Advertising in Violation of Section 43(a) of the Lanham Act** – Dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff lacks standing necessary to advance such a claim, and because Plaintiff has otherwise insufficiently pleaded its claim. Further, dismissal is warranted pursuant to Fed. R. Civ. P. 56(a) because no evidence exists to support various elements of its claim, and to the extent evidence does exist, there is an absence of dispute with respect to the material facts at issue.

- ➢ **Count V: Unfair and Deceptive Trade Practices Under the MCPA, MCL § 445.901 *et al*.** – Dismissal is warranted pursuant to Fed. R. Civ. P. 12(b)(6) because the applicable statutory and case law provides such claim is prohibited. Further, dismissal is warranted pursuant to Fed. R. Civ. P.

56(a) because no evidence exists to support the various elements of its claim, and to the extent evidence does exist, there is an absence of dispute with respect to the material facts at issue.

➢ **Count VI: Copyright Infringement** – Dismissal is warranted pursuant to Fed. R. Civ. P. 56(a) because Plaintiff cannot demonstrate direct or circumstantial evidence of copying, because the logos at issue are not substantially similar, and because without evidence of copying, there can be no copyright infringement.

Shortly after its filing in December 2019, Plaintiff unsuccessfully moved this Court in seeking a preliminary injunction. (**ECF No. 44**). Thereafter, following approximately a year of discovery, very little, if anything, has been produced in support of Plaintiff's tenuous legal theories. In short, since then, the facts have not materially changed. The trademarks and trade dress at issue – which this Honorable Court previously found "very different" – have remained the same. (**ECF No. 44, PageID.563**). Testimony presented by several key witnesses only further demonstrates that the development of Defendants' trademark and trade dress was done without reference to Plaintiff, consistent with declarations previously submitted to the Court by Defendants and relevant third parties. (**Exhibit 1**, *Dep. Tiley*, p.15:1-10, p.23:13-20, p.28:3-25, p.29:1, p.31:5-8, p.96:17-25, pp.97-98); (**Exhibit 2**, Dep. *Dagher*, p.11:1-17, p.25:18-25, p.26, p.27:1-15). There is absolutely no evidence of copying, the lynchpin of any infringement claim.

Plaintiff advances additional claims (i.e., Count III for Lanham Act false advertisement, Count VI for false advertisement under Michigan's Consumer Protection Act ("MCPA"), and Count VI for copyright infringement) without consideration of the merits of those claims, or Defendants' legal and factual positions in defense of those claims, and such claims equally lack merit.

The record reflects this case remains motivated less by legitimate concern as to the propriety of Plaintiff's intellectual property rights, and more by a tactic to impede Defendants' ability to continue the expansion of its franchise, which continues to successfully expand into new states and territories. Notably, Defendants are forced to disclose this groundless litigation to potential franchisees through their Franchise Disclosure Documents, with negative consequences. Plaintiff has scorched the Earth causing Defendants undue time and expense in having to defend itself against Plaintiff's unreasonable, vexatious litigation practices. Plaintiff's motivations are best stated by its owner himself: Costa "Gus" Malliaras. Upon the eve of filing his lawsuit, he wrote to his "franchise owners" that "[t]his law suit [sic] is not meant as a simple scare tactic; we are proceeding in an extremely aggressive and merciless manner and plan to utilize every media option available to us." (**ECF No. 60-3,** *Malliaras Email, 12/17/2019*).  This "extremely aggressive and merciless" strategy has been and continues to be employed extensively, despite Plaintiff's inability to meet its evidentiary burdens, and despite Defendants' repeated

demonstration that they have not infringed upon Plaintiff's legal rights. (**Exhibit 3**, *Safe Harbor Letter*, *7/28/2020*). Plaintiff's harassment can no longer continue.

## II. <u>FACTUAL BACKGROUND</u>[1]

Defendant Wing Snob provides seven franchise locations in the Metro-Detroit area, with an eighth location on its way, in addition to franchise offerings in Ohio, Texas, and Canada. Wing Snob is one of many options available for fast casual fried chicken in the Metro-Detroit area. Other offerings include Popeye's Louisiana Kitchen, Buffalo Wild Wings, Chicken Shack, Kentucky Fried Chicken, City Wings, Church's Chicken, Wing Stop, Captain Jay's Fish and Chicken, and Plaintiff DWC. Prior to opening their first location, Defendants conducted extensive market research, including exactly one meeting with DWC's owner, Costa "Gus" Malliaras; however, at no time did Defendants indicate they intended to copy Plaintiff, contrary to Plaintiff's hollow assertion in his Complaint. *See* Brian Shunia's affidavit in rebuttal. (**ECF No. 20-2**).

While Wing Snob has enjoyed great success during its infancy, and has now expanded beyond Michigan's borders, Plaintiff's business has remained intrastate, not enjoying the same growth as Defendants. Without ever communicating Plaintiff's perceived concerns to Defendants, i.e., without issuing cease and desist correspondence, without making any good faith attempts to assuage his mere

---

[1] Defendants incorporate **ECF No. 20, PageID.168-169**, Factual Background.

assumptions, and while standing by idly for many years (**ECF No. 60-2**, *Dep.*

*Malliaras*, pp. 148:24-25, 149-151), Gus Malliaras instead directed the present

lawsuit to be filed, proceeding in his "extremely aggressive and merciless" fashion,

in defiance of the abundant factual record which demonstrates there has been

absolutely no infringement, no intent to copy Plaintiff's pseudo-franchise model,

and no other viable claims which warrant further litigation.

### III.   <u>LEGAL STANDARD</u>

Dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is proper

where, accepting the factual allegations in the complaint as true, the plaintiff is

nevertheless not entitled to relief. *See Columbia Natural Resources, Inc. v. Tatum*,

58 F.3d 1101, 1109 (6th Cir. 1995) Relatedly, dismissal for failure to state a claim

is warranted where "the complaint fails to set forth an allegation of a required

element of a claim." *Pack v. Martin*, 174 F. App'x 256, 258 (6th Cir. 2006). Pursuant

to Fed. R. Civ. P. 56(a), summary judgment is proper if "the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." *Id.*

### IV.   <u>ARGUMENT</u>

#### 1.  Trademark and Trade Dress Infringement Claims (Counts I & IV)

##### a.  Applicable Test

To recover for trade dress infringement under §43(a), a party must prove by a

preponderance of the evidence: 1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000). The first step in qualifying trade dress for protection under §43(a) is proving distinctiveness. "[C]ourts have universally imposed th[is] requirement, since without distinctiveness the trade dress would not cause confusion ... as to the origin, sponsorship, or approval of [the] goods,' as [section 43(a)] requires." *Samara Bros.*, at 210.

Additionally, the Sixth Circuit has stated that a Lanham Act Plaintiff must show that the defendant's use of the trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). To determine confusion, the Court analyzes the eight *Frisch* Factors.[2] The Sixth Circuit has instructed litigants that the concept underlying the likelihood of confusion analysis is whether the public believes that "the mark's owner sponsored or otherwise approved the use of the trademark." *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983).

### b. Plaintiff cannot demonstrate distinctiveness or non-functionality.

---

[2] *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

The first step in a trade dress infringement case is to list the discrete elements that make up the combination of elements claimed as comprising the trade dress. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, (6th Cir. 2002). In prior filings Plaintiff has described what Defendants can only surmise is the required listing of features as discussed above. (**ECF No. 10, PageID.54**). These items are: (1) clean lines; (2) ledgestone accents; (3) circular logo; (4) horizontal rough wood paneling inside its restaurants; and (5) a black/orange/white color scheme. The first, second, and fifth elements are not distinctive and therefore not protectible. When a party uses a color as its trademark, it cannot be inherently distinctive. *Samara Bros., Inc.* at 211. Moreover, Wing Snob's color scheme includes grey and red while DWC's does not.

The fourth element, horizontal wide width shadow boxed brown wood, is not what Defendants use. Defendants use multi-color painted wood, in a much thinner width, and entirely different style, than what is found at DWC locations. (**ECF No. 20-3**). Additionally, the purported capability of a circle or a chicken to identify Plaintiff as the source of the product at issue is a fallacy in light of the scores of chicken products on the market that use circles and chicken in their packaging. Within minutes of searching Defendants located pictures of many products meeting these criteria. (**ECF No. 20-5**)

In *Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130, at pp. 11-12, the

7

court drew a "distinction between arbitrarily selecting design elements that result in a unique and distinctive trade dress and arbitrarily selecting elements that result in nothing more than a generic design." The court found the trade dress at issue there fell in the latter category due in part to a lack of evidence that other restaurants did not use the same elements and that customers exclusively associated those elements and menu items with the plaintiff. *Id.* at 10. The court found that the plaintiff had failed to establish distinctiveness because "[w]ithout the use of [the plaintiff]'s name and logo within the design or on the menu, there is nothing that would alert the average consumer that they are in a [plaintiff's] restaurant." *Id.* at 12. No additional evidence has been produced in this case related to the distinctiveness of the logos in question since the Court denied preliminary injunction stating that: "Here, Defendants have presented evidence that many restaurants that serve chicken use circles and/or images of chicken in their logos. (See dkt. 20-5.) Also, Plaintiff has not presented evidence that customers exclusively associate the elements of its design with its restaurants. Based on the record before the Court, it appears that, like in *Happy's*, without the use of Plaintiff's name and logos, there is nothing that would alert customers that they are in Plaintiff's restaurants. Thus, the probability is low that Plaintiff can establish distinctiveness." (**ECF No. 44, PageID.561**).

 Where a trade dress is not inherently distinctive, there must be evidence that the product has acquired some "secondary meaning" in the marketplace in order for

the trade dress at issue to be protectible. *See Abercrombie & Fitch Stores* 280 F.3d
619. The Sixth Circuit has applied a seven-factor test for determining the existence
of secondary meaning in trade dress.[3]

Plaintiff has still produced *no evidence* regarding any of the factors; and
Defendants particularly call into question elements (a) and (g). Accordingly, there is
no "secondary meaning" in Plaintiff's claimed trade dress. Because Plaintiff's trade
dress at issue is neither "inherently distinctive," nor has it acquired "secondary
meaning," Plaintiff has failed to satisfy one of the required parts of the test to recover
for trade dress infringement under §43(a). Nothing has changed since this Court
issued its Order denying preliminary injunction and stated "nor has Plaintiff
established that its trade dress has acquired secondary meaning." (**ECF No. 44,
PageID.561**). Therefore, at the outset, Plaintiff has not and cannot support a claim
for trade dress infringement under §43(a) because they have presented no evidence
to establish that its trade dress has acquired secondary meaning.

### c.  Plaintiff cannot demonstrate likelihood of confusion.

Even if we assume that Plaintiff's alleged trade dress is somehow inherently
distinctive and non-functional, and therefore protectable, Plaintiff is unable to

---

[3] See *Marketing Displays, Inc. v. TrafFix Devices, Inc.,* 200 F.3d 929, 937 (6th Cir.
2000). That test looks to: (a) direct consumer testimony; (b) consumer surveys; (c)
exclusivity, length, and manner of use; (d) amount and manner of advertising; (e)
amount of sales and number of customers; (f) established place in the market; and
(g) proof of intentional copying. *Id.*

demonstrate a likelihood of confusion, further warranting dismissal. Again, Plaintiff must show that the defendant's use of the trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music* at 280. And in order to determine confusion, the Court analyzes the eight *Frisch* Factors. *Frisch's Rests., Inc.* at 648 (6th Cir. 1982).

Taken and considered as a whole, Defendants' trade dress has many more differences from Plaintiff's trade dress than any alleged similarities. As analyzed by Judge Edmunds in the *Cosmetic Dermatology* case, three of the most important factors in the likelihood of confusion analysis are factors 1, 3, and 4. *See Cosmetic Dermatology and Vein Ctrs. of Downriver, P.C. v. New Faces Skin Care Ctrs., LTD.*, 91 F. Supp. 2d 1045 (E.D. Mich. 2000). Much like the trademarks at issue in *Cosmetic Dermatology*, an analysis of factors 1, 3, and 4 in this case results in the same conclusion – Plaintiff's marks are not strong, the marks are not substantially similar to Defendants' marks, and there is very little, if any, admissible evidence of actual confusion. As such, there is no likelihood of confusion and Plaintiff's claim for trade dress infringement under §43(a) fails.

### i.  No Likelihood of Confusion – *Frisch* Factor Analysis

**Strength/Weakness of the Plaintiff's Mark.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.176-178**). This factor is closely related to the determination of inherent distinctiveness, and

some overlap between the two exists. *McKeon Prods. v. Flents Prods Co.,* 2002 U.S. Dist. LEXIS 27123 (E.D. Mich. 2003). As determined before, the elements Plaintiff alleges comprise its trade dress are merely descriptive and/or generic, and as such, are not considered "strong" marks under the *Abercrombie* taxonomy.

In addition, trademarks that have been registered for five or more years are considered strong and worthy of protection. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988). Neither of Plaintiff's trademarks meets that standard. Since the filing of the Complaint until present, Plaintiff has not advanced arguments that either of its trademarks are strong and it has failed to meet its burden. With respect to its trade dress, though, Plaintiff asserts that various aspects of its trade dress are strong, unique, and distinctive. This is not true. There is nothing unique in the fried chicken market about any of the following: circular logos; the color combination black, orange, and white; wood paneling; "clean lines"; "ledgestone accents"; menus including chicken wings, cornbread, soda, and fries; and/or chicken wings being sold by the dozen or half dozen. Accordingly, Plaintiff's trade dress is weak, and this factor of the analysis favors Defendants.

**Relatedness of the Goods.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.178**). While Plaintiff and Defendants both sell chicken wings, the products are differentiated by Defendants' inclusion of sliders, cauli wings, and other food items. This was a conscious decision

by Defendants to separate its product from the "pack" which includes Plaintiff. DWC's owner Gus Malliaras testified during his deposition that DWC does not sell sliders or cauli wings. (**ECF No. 60-2**, p. 225) As the goods are somewhat, but not totally related, this factor favors Defendants. However, even if the goods or service at issue are similar, "the import of this high correlation is dependent upon the extent to which the marks are similar." *See Cosmetic Dermatology* at 18-19.

**Similarity of the Marks.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.178-180**). In order to evaluate the similarity of the marks, they should be "viewed in their entirety" and the court should "focus on their overall impressions, not individual features." *See Daddy's Junky Music* at 283. In evaluating Plaintiff's allegations, it is instructive to begin with what Plaintiff alleges is identical. Plaintiff asserts that the trademark logos and trade dress at issue are confusingly similar. Even a brief glance at the logos and trade dress shows that none of the above claims are true. The dominant text of the primary logos is extremely different. Defendants spell out the words "Wing Snob" in white, while Plaintiff's use only the initials "DWC" in burnt orange. The fonts used are also entirely different. The Wing Snob logo uses a predominantly light grey background while DWC uses almost entirely black. The Wing Snob logo includes a centralized head of a colorful cartoon chicken in white, orange, and red while the DWC logo has a miniscule, white, traditional full chicken profile at the bottom of their design.

In fact, Gus Malliaras was questioned about an email he sent to his designer Jennifer Daly at Smashbox Designs in 2015 that referenced a restaurant in Detroit for inspiration – that has chicken wings on its menu – called Hudson Café. Mr. Malliaras testified that he had known the owners of Hudson Café, which he listed by name, "[a] long time. Years and years and years." (**ECF No. 60-2**, pp. 224-225). Gus was then shown a series of photos comparing the Hudson Café logo (along with its other brand The Jagged Fork) and DWC's Logo. Those three logos look like this:

  

Gus testified that he agreed *both* DWC's logo and Jagged Fork's are circles, have horizontal writing through the middle, and have text that tracks the periphery of the circle with respect to the Hudson Café logo. He did not deny that he was familiar with the Hudson Café and Jagged Fork logos at the time he created the DWC logo. (**ECF No. 60-2**, pp. 224-225). Yet, Gus maintains that the Wing Snob logo contains enough similarities to the DWC logo to support a claim of infringement. The Wing Snob logo looks like this:

As to the trade dress, the color schemes are not identical. Wing Snob uses grey and red as a large part of its color scheme, which DWC does not. Plaintiff uses wide rough brown unfinished wood inside all its locations. Defendants use narrow multi-

color painted thin strips of wood. Wing Snob uses a sleek modern look with traditional tables and chairs while DWC uses a rustic look including the use of indoor picnic tables. The difference is obvious upon visual inspection. **ECF No. 20-3**.

Another element which differentiates the trade dress is Defendants' prominent display of its distinctive name "Wing Snob" in its logo, at its store locations, on its menus, and in its marketing materials. One cannot mistake the fact that they are at a Wing Snob location upon approaching the locations and/or entering the shop. The use of the company name, or house mark, may decrease the likelihood of confusion. *See, e.g., Luigino's, Inc. v. Stouffer Corp*., 170 F.3d 827 (8th Cir. 1999). As the trade dress and logos are objectively dissimilar, do not cause confusion, and Defendants prominently display their unique logo, this factor favors Defendants.

**Evidence of Actual Confusion.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.180-182**). The Sixth Circuit has advised litigants that "evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Daddy's Junky Music* at 284. However, critically, "few or isolated instances of actual confusion may suggest that there is no confusion at all." *Id*. Prior to the close of discovery, Plaintiff had only presented only three isolated "instances" of actual confusion:

(1) A *deleted* Tweet made on September 22, 2019 from "danny" (**ECF No 3, ¶ 48**);
(2) An *undated* email from "Lawrence Muglia," with false contact information, which does not mention Wing Snob, and which could apply to any number of chicken-wing restaurants that serve a "waffles sauce" (**ECF No. 3, ¶ 49**); and

14

(3) Gus Malliaras's own, *unsworn* declaration that he witnessed exactly one instance of "confusion" (**ECF No. 10-2, ¶ 32**).

With respect to each of the previous "examples" of actual confusion, it is unclear and unstated what, if anything, caused these consumers to become confused. In other words, there is no evidence that the logos are substantially similar and, as such, caused confusion in the marketplace. There is no evidence that the trade dress is substantially similar and, as such, caused confusion in the marketplace. There is no particularity. Conversely, there is abundant evidence that consumers differentiate Wing Snob and DWC all the time. *See* **ECF No. 20-6**; **Exhibit 4**. Plaintiff has only presented isolated "evidence" which suggests there is no confusion at all. In addition, each of the above "examples" of actual confusion faces evidentiary hurdles and are, or contain, hearsay statements in violation of FRE 802 and should be rendered inadmissible should Plaintiff raise them in support of its claim.

When questioned under oath regarding these examples, Mr. Malliaras testified that example number 3 above involved "girls…I don't know what age, I would assume high school age." He did not recall how they were dressed, he believed there were three of them, and they were encountered at a gas station near Eight Mile and Mack Avenue on a date he could not recall. He did not get any names or contact information for the alleged speakers of the confusion evidence. (**ECF No. 60-2**, pp. 36-39). Gus also testified that he had no idea who the speakers were in the purported example of confusion that consisted of an Instagram screenshot that had

15

been produced in his self-serving "Rebuttal Declaration." (**ECF No. 22-2**). He testified that he was making inferences as to what the speaker intended to communicate. (**ECF No. 60-2**, p. 163:4-25, p. 164-165, p. 166:1-2).

On the date of the close of discovery, January 19, 2021, and one week later on January 27, 2021, DWC produced, respectively, an email from DWC store manager Michael Cardasis and then an email from DWC store manager Peter Vozis. Each purported to have witnessed an incident of confusion. (**Exhibit 5**, *Emails from DWC Managers*). Both instances involve unidentified speakers, they do not describe the alleged confusion with particularity, and there is no contact information available for the speakers. Mr. Cardasis confirmed same under oath. (**Exhibit 6**, *Dep. Cardasis*, pp. 59-70). Plaintiff cannot, and has not, described with particularity any of the alleged examples of confusion that were produced – which are also inadmissible hearsay – nor can DWC authenticate the speakers alleged in same.

Moreover, the Ninth Circuit has held that affidavits of employees and close affiliates of a trademark holder carry *de minimus* evidentiary weight in trademark cases. *Continental Laboratory Products, Inc. v. Medax Intern., Inc.,* 114 F. Supp. 2d 992 (S.D. Cal. 2000). This factor is also deserving of considerable weight because "the particular circumstances indicate such evidence [of actual confusion] should have been available." *Wynn Oil Co.* at 1183. It is remarkable that Wing Snob's primary logo and trade dress have been around since at least Fall 2017 and this is the

16

only evidence that Plaintiff has been able to obtain. "[W]here the parties have been doing business in the same area for some time and where they have advertised extensively, isolated instances of actual confusion are not conclusive or entitled to great weight in the determination."[4] As there is no probative, reliable evidence of actual confusion, this factor strongly weighs in favor of Defendants.

**Marketing Channels Used.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.182**). Plaintiff has presented no evidence of the marketing channels used other than a mere assertion. However, it is undoubtedly true that the parties employ similar marketing approaches and techniques. This includes website domain hosting, social media presence, and advertising. This is true of many, and probably most, restaurant businesses in today's modern world. This factor favors neither Plaintiff nor Defendants.

**Likely Degree of Purchaser Care.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.182-183**). "[T]he effect of purchaser care, although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue. If the [Court] ultimately determines that the marks are not very similar, then even a high degree of purchaser care will decrease only slightly the already low likelihood of confusion." *Deere & Co. v.*

---

[4] *Homeowners Group*, 931 F.2d at 1110 (citing *Sun Banks, Inc. v. Sun Fed. Savs. & Loan*, 651 F.2d 311, 319 (5th Cir. 1981) (nineteen reports over three years held insufficient).

*Fimco Inc.*, 302 F. Supp. 3d 837, 891 (W.D. Ky. 2017). In addition to the fact that the Parties' logos are dissimilar, chicken wings are sometimes considered a specialty item within the food industry. Although chicken wings are wildly popular, these franchises highlight their chicken wings as a specialty item. Defendants chose their very name of Wing "Snob" to pay homage to the fact that many chicken wing customers consider themselves connoisseurs. Therefore, there is a high degree of purchaser care and this factor weighs in favor of Defendants.

**Defendant's Intent in Selecting the Mark.** Defendants incorporate by reference their earlier briefing on this sub-issue (**ECF No. 20, PageID.183-184**). As demonstrated by Brian Shunia's affidavit and deposition testimony, and John Tiley's Declaration and deposition testimony, Defendants had non-infringing reasons for their trademarks and logos. (**ECF No. 20-2**, ¶¶ 5-8, **ECF No. 60-1**, p. 40:16-25, p. 41:1-2, p. 94:15-24, p. 96:3-7,1 3-16 p. 97:16-25, p. 98:1-7, 18-25, p. 99:4-12, pp. 107-108). In fact, Defendants did not even design their logos, third-party design companies did, and without knowledge of DWC. (**ECF No. 20-2**, ¶¶ 6-8; **ECF No. 35-2**; **Exhibit 1**, p. 14:24-25, p. 15:1-10, p. 23:13-20, pp. 28-29, p. 31:7-8, p. 69:1-19).

To support its farfetched and disingenuous theory, Plaintiff offers *one* piece of evidence - Plaintiff's owner's remembrance of a hearsay statement from one of Wing Snob's owners. Later, in Gus Malliaras' Declaration, he clarified that "[Brian]

told me he was just going to open a similar chicken wing restaurant," and that "[Gus] understood [Brian's] comments to mean that he was going to intentionally copy Detroit Wing's business. There was no intent to copy Plaintiff's business. When asked if he was inspired by Gus and DWC to create his Wing Snob business, Brian Shunia definitively testified that he was not. (**ECF 60-1**, p. 28:23-25).

Even if intentional copying were proved, which it cannot be, it would have no bearing. "If comparison of the works reveals no fair jury issue concerning likelihood of confusion, then intent to copy, even if found from the proffered evidence, would not establish a Lanham Act violation." *Warner Bros. v. ABC.,* 720 F.2d 231, 246-47 (2d Cir. 1983). Here, Defendants have done nothing more than use colors, menu items, and building techniques which are commonplace. There is no evidence of copying; therefore, this factor strongly favors Defendants.

**Likelihood of Expansion of the Product Lines.** Defendants incorporate by reference their earlier briefing on this sub-issue. (**ECF No. 20, PageID.184-185**). Defendants intent to continue to expand outside of the Michigan market demonstrates that Defendants are competing with national providers of fried chicken rather than locally here in Michigan. Therefore, this factor carries no weight.

**Conclusion: There is No Likelihood of Confusion.** Considering the factors, there is no likelihood of confusion. Even though the marketing channels may be similar (though Defendants have a wider influence), the services are similar, and

both parties endeavor to expand their business operations, these factors, when considered against the others, do not constitute a likelihood of confusion when balanced. In fact, the most compelling and important factors strongly favor the Defendants. The marks are not substantially similar. Plaintiff's marks are not strong. There is very little, if any, admissible evidence of actual confusion, and none that can be substantiated by first person testimony, and instead, the isolated evidence that exists supports Defendants' position that summary judgement is warranted.

### 2. Plaintiff's Unfair Competition Claim (Count II)

#### a. Applicable Test

"Under the Lanham Act § 43(a), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical — is there a 'likelihood of confusion?'" *Two Pesos, Inc. v. Taco Cabana*, Inc., 505 U.S. 763, 780 (1992) (internal citations omitted). The key question in cases where a plaintiff alleges trademark infringement and unfair competition is whether the defendant's actions "create a likelihood of confusion as to the origin of the parties' goods or services." *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002). Unlike a claim of trademark infringement, a claim of unfair competition does not require the use of the plaintiff's trademark. *Bird* at 877.

#### b. The analysis is the same, and there is no "unfair competition."

20

Defendants rely in large part on their above likelihood of confusion analysis. Plaintiff and Defendants' trademarks and dress are substantially different, and there is no reliable evidence of confusion stated with particularity. There is also ample evidence in the same channels of social media and customer feedback that consumers differentiate the brands and are not confused. (**Exhibit 4**). Therefore, Defendants' actions do not create a likelihood of confusion as to the origin of the parties' goods or services and Plaintiff's claim fails along with Counts I and IV.

### 3.  Section 43(a) Lanham Act False Advertising Claim (Count III)

#### a.  Plaintiff lacks standing to assert its false advertising claim.

Plaintiff does not meet the requisite pleading requirements for its Section 43(a) Lanham Act false advertising claim, contrary to binding U.S. Supreme Court precedent, including *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) and its progeny. To establish its statutory standing, Plaintiff must first allege, and ultimately prove, it falls within the "zone of interests" in a suit for false advertising. *Id*. Plaintiff must equally allege, and prove, an injury to a commercial interest in reputation or sales. *Id*. at 130; *Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 662 (E.D. Mich. 2017). Plaintiff has made neither allegation in its Complaint (**ECF No. 3, PageID.17-18**), nor can Plaintiff present sufficient proofs to this Court, thereby warranting dismissal of this claim pursuant to Fed. R. Civ. P. 12(b)(6).

With respect to the first *Lexmark* prong, Plaintiff has not alleged that it falls within the applicable "zone of interests," i.e., that it has or will suffer a competitive injury caused by Defendants' alleged false advertising. *See Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 662 (E.D. Mich. 2017). Plaintiff does not allege that Defendants' alleged misconduct has injured Plaintiff's reputation or sales either. *Id*. At best, Plaintiff only alleges that Defendants' alleged misrepresentations are "material to customer decisions to patronize one restaurant or another" (**ECF No. 3, ¶ 78**) and that Plaintiff "has been and is being injured" by these alleged misrepresentations. *Id.* at **¶ 80**. It has not and does not allege with any detail or particularity the type of competitive injury it claims has been suffered.

With respect to the second *Lexmark* prong, Plaintiff has not alleged that any commercial injury was proximately caused by Defendants' alleged false advertising. "The proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark* at 133. Plaintiff only alleges that it "has been and is being injured" by the alleged false advertising (**ECF No. 3, ¶ 80**). Plaintiff does not allege such injury is commercial, economic, or reputational in nature, nor does it allege that its injuries were proximately caused by the alleged misconduct.

### b. Plaintiff has insufficiently pleaded the five required legal elements.

The Sixth Circuit has established a five-part test for establishing a false advertising claim under the Lanham Act, which consists of the following elements:

> (1) the defendant has made a false or misleading statement of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the statement was introduced into interstate commerce; and (5) there is a causal link between the challenged statements and harm to the plaintiff. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc*., 185 F.3d 606, 613 (6th Cir. 1999).

In its Complaint, Plaintiff raises only four alleged instances of false advertising, claiming Wing Snob was "[1] representing to the public that it brines its wings, that [2] it marinates its wings for 24 hours, that [3] it makes its corn bread from scratch, and [4] that it uses house-made sauces." (**ECF No. 3, PageID.17**). Despite pleading the first element, even a cursory review of Plaintiff's Complaint reveals that Plaintiff does not plead allegations which, even if accepted as true for purposes of Rule 12, are sufficient to establish its false advertising claim. Plaintiff does not allege the four statements at issue "actually deceive or tend to deceive a substantial portion of the intended audience" as required by law. Plaintiff does not allege the statements were "introduced into interstate commerce" as required by law. Instead, Plaintiff states such statements were "represented to the public" (**ECF No. 3, PageID.17**), but does not plead the means in which they were introduced, or

whether they were introduced into interstate commerce at all. Lastly, though Plaintiff loosely alleges that the four representations "are material to customer decisions to patronize one restaurant or another" (**ECF No. 3, PageID.17**), it does not allege the statements were *likely* to influence a consumer's decision making, only claiming they somehow played a material role in such decision-making process. Plaintiff's allegations fail to state a claim upon which relief may be granted.

### c.  Plaintiff cannot establish any of the required elements.

Separate and distinct from Plaintiff's standing and pleading failures, Plaintiff cannot establish any of the required elements to show that Defendants falsely advertised, which independently warrants dismissal of its claim pursuant to Fed. R. Civ. P. 56(a). As a preliminary note, Defendants point out when Plaintiff filed its lawsuit, it had no evidence that Defendants committed false advertisement. Defendants requested documentary proof from Plaintiff of Defendants' alleged false advertising, including and specifically each and every allegation made in Count III of Plaintiff's Complaint. Nonetheless, only one piece of evidence – an obfuscated screenshot from Exhibit 8 – was produced in support thereof.  (**Exhibit 7**, *DWC's First RFP Responses*, No. 5). Instead, Plaintiff's claim was largely explored through deposition testimony given by Defendants' co-owner Brian Shunia. Therein, counsel produced Plaintiff's Exhibit 68, which contained a Facebook post from Wing Snob's Facebook page, dated December 2017. (**Exhibit 8**, *Social Media Post*). Unless it is

hiding something, Defendants believe this is Plaintiff's only evidence of false advertising it has to present to this Court.

The post at issue is not advertising as defined under 15 U.S.C. § 1125(a) and related case law – it is a "Short Story of the Wing Snob," which describes the concept at its earliest stages dating back to 2017, approximately one month after its first location opened (**ECF No. 60-1**, p. 43), including Defendants' preliminary vision and some of their original food offerings. The Sixth Circuit has defined "commercial advertising or promotion" as (1) commercial speech; (2) for the purpose of influencing customers to buy the defendant's goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the plaintiff's or defendant's existing customer or client base. *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015). Plaintiff has not presented and cannot present evidence to support elements 1-3 *in toto*.

In returning to the legal elements at issue, and with respect to the first element of a Lanham Act claim (i.e., the requirement that a defendant made a false or misleading statement), a plaintiff may show that the defendant's advertising communicated a "literally false" message to consumers. *Am. Council* at 614. This is the preferred route for Lanham Act claimants, since courts presume that consumers were actually deceived upon a showing of literal falsity. *Wysong Corp. v. APN, Inc.*,

889 F.3d 267, 270-71 (6th Cir. 2018). If such showing cannot be made, a plaintiff can alternatively show that defendant's messaging was "misleading," even if not literally false. *Id*. To prevail on this theory, however, the claimant must prove that a "significant portion" of reasonable consumers were actually deceived by the defendant's messaging. *Id.* Lanham Act claimants usually do so with consumer surveys. *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 271 (6th Cir. 2018).

Here, Plaintiff cannot demonstrate that three of Defendants' four alleged statements were made, let alone literally false. First, Defendants did not state in the Facebook post at issue that they "brine their wings," or "marinate [their] wings for 24 hours," or "make [their] corn bread (sic) from scratch." (**Exhibit 8**). At best, the post does state that Defendants "[used] house-made sauces" and marinated their *chicken* for 24 hours. *Id*. Importantly, Mr. Shunia's testimony assuages any potential doubt as to Plaintiff's frivolous false advertising claim. He testified that, at one point in time during the early Wing Snob days, Defendants did, in fact, brine their wings, and did marinate their wings for a 24-hour period. (**ECF No. 60-1**, pp. 49-51). His testimony was entirely silent as to corn bread, and no evidence exists to demonstrate false advertising with respect to this allegation. Mr. Shunia further testified that Defendants did use house-made sauces, in addition to other over-the-counter sauces. (*Id*. at 45). To the extent these representations were, in fact, made or made publicly available through the Facebook post at issue, they were true at the time of their

making, and there is no evidence to the contrary. Lastly, Plaintiff cannot show any of the alleged misrepresentations to be literally false, contrary to its pleadings.

Consequently, because Plaintiff cannot show that any of Defendants' alleged statements were literally false, Plaintiff must prove that a "significant portion" of reasonable consumers were actually deceived by Defendants' messaging. Lanham Act claimants usually do so with consumer surveys. Plaintiff has already revealed it has conducted no such surveys in this case, let alone any surveys. (**Exhibit 9**, *DWC's First Rog. Responses*, at No. 13). No other evidence exists to support the finding that a significant portion of reasonable consumers were actually deceived by such messaging, and therefore this claim must be dismissed.

With respect to the second element, the aggrieved must present "evidence of some sort demonstrating that consumers were misled," thus "show[ing] how consumers actually do react" rather than "arguing how consumers could react." *La.-Pacific Corp. v. James Hardie Bldg. Prods*., 928 F.3d 514, 518 (6th Cir. 2019) (internal citations omitted). Plaintiff has not provided, and cannot present with evidence, that consumers were misled by Defendants' false advertising as alleged.

The factual record is devoid of any evidence to support the remaining elements of a false advertising claim, i.e., that the alleged statements at issue actually deceive or tend to deceive a substantial portion of the intended audience, the statements are material in that they will likely influence the deceived consumer's

purchasing decisions, the statements were introduced into interstate commerce, and there is a causal link between the challenged statements and harm to the plaintiff. Only by satisfying each element can Plaintiff succeed on its false advertising claim.

### 4. MCPA False Advertising Claim (Count V)

#### a. Plaintiff's MCPA claim is precluded by law, and Plaintiff otherwise lacks standing to assert this claim.

Plaintiff alleges Defendants violated the Michigan Consumer Protection Act ("MCPA") by engaging in "unfair and deceptive trade practices" specifically through their alleged false advertising. (**ECF No. 3, PageID.17-18**). The MCPA is codified under Michigan law at MCL § 445.901 *et seq*. and prohibits various methods of conduct trade or commerce. *See* MCL § 445.903. However, MCL § 445.904(1) exempts many businesses from the MCPA, stating that the "[MCPA] does not apply to . . . [a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Importantly, the Michigan Supreme Court reads MCL § 445.904(1) very broadly, holding that "the relevant inquiry is . . . whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *See Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465; 597 N.W.2d 28 (1999). This standard was subsequently clarified by the Michigan Supreme Court, stating the exception "requires a general transaction that

is 'explicitly sanctioned'" by state or federal law. See *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 213; 732 N.W.2d 514 (2007). *Rosenbaum v. Toyota Motor Sales, USA, Inc*., 2016 U.S. Dist. LEXIS 193339, at *8 (E.D. Mich. Oct. 21, 2016).

The question is whether Defendants' alleged false advertising of their food products is explicitly authorized or sanctioned by state *or* federal law. It is because such conduct is authorized and would be sanctioned under a variety of different laws, both state and federal. For example, the U.S. federal food law, codified at 15 U.S.C. § 45, generally prohibits unfair methods of competition in or affecting commerce, and 15 U.S.C. §§ 52, 55 specifically sanction false advertisement in connection with food products. The Food and Drug Administration ("FDA") prohibits similar actions. *See* 21 U.S.C. § 378; *see also Peter v. Stryker Orthopaedics, Inc.,* 581 F. Supp. 2d 813, 816 (E.D. Mich. 2008). Michigan's Food Law, MCL § 289.5101 *et seq*., sanctions misleading advertising. Therefore, even accepting the facts alleged in the Complaint as true, Plaintiff's MCPA claim fails to state a claim upon which relief can be granted and summary judgment pursuant to Rule 12 is warranted.

As a separate, alternative means of dismissal, Plaintiff lacks standing to assert its MCPA claim. Although Plaintiff's claim concerns Defendants' alleged unfair practices under the MCPA "in the conduct of trade or commerce," the relevant statute defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes . . . ."

MCL § 445.902(d). Here, Plaintiff and Defendants, as business competitors, never engaged in any trade or commerce with each other within the meaning of the statute as related to the allegations in Plaintiff's Complaint. No purchase of goods or services was involved in connection with Defendants' alleged false advertising. *See Cosmetic Dermatology and Vein Ctrs. Of Downriver, P.C. v. New Faces Skin Care Ctrs., LTD.*, 91 F. Supp. 2d 1045, 1059 (E.D. Mich. 2000). Because Plaintiff did not buy goods or services from Defendants within the meaning of the MCPA, it did not engage in trade or commerce, it further lacks standing to assert the claim, and Plaintiff's MCPA claim therefore must fail.

**b. The factual record is devoid of support for Plaintiff's MCPA claim.**

Even if Plaintiff's MCPA claim were able to stand, which it cannot for the reasons set forth above, the claim additionally fails with reference to the underlying factual record. Defendants have not falsely advertised as discussed in the preceding argument section. No evidence exists to show the statements at issue were actually rendered (e.g., concerning Defendants' cornbread, marinating its "wings") or, to the extent it does exist, the evidence demonstrates the statements were true and not "literally false" (e.g., brining of wings, using home-made sauces). Therefore, summary judgment is further justified pursuant to Fed. R. Civ. P. 56(a).

**5. Copyright Infringement Claim (Count VI)**

**a. Defendants did not copy Plaintiff's "chicken art" copyright.**

30

To state a claim for copyright infringement, a plaintiff must allege facts establishing: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). A plaintiff may show copying "either by direct evidence of copying, or by proof that Defendants had access to the copyrighted work and that the copyrighted work and the infringing work are substantially similar." *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1031 (E.D. Mich. 1998).

Plaintiff's copyright infringement claim pertains only to the so-called "chicken logos" at issue. (**ECF No. 3, PageID.9**). By way of further background, Defendants sell Wing Snob merchandise online to consumers. These items consist of merchandise like t-shirts, sweatshirts, pens, and other small items which are designed by a third party called BrandIT. One such item was a sweatshirt bearing Defendants' "chicken logo." (**Exhibit 10**, *"Chicken Art" Sweatshirt*). Plaintiff's copyright infringement claim is solely premised upon its theory that Defendants copied Plaintiff's "chicken art" logo through the creation of this sweatshirt.

The ownership of Plaintiff's sole copyright (Registration Number VA 2-181-062) is not in dispute. However, based upon the voluminous evidentiary record before the Court, Plaintiff cannot demonstrate Defendants copied the constituent elements of the copyright that are original. Particularly, Plaintiff cannot show that Defendants directly copied Plaintiff's copyright. Nor can Plaintiff show that

Defendants had access to the copyrighted work, to illustrate circumstantial evidence of copying. Finally, Plaintiff cannot demonstrate that the copyrighted work and the allegedly infringing work are substantially similar.

### i.  Direct evidence of copying does not exist.

Plaintiff has not, and cannot, show direct evidence of copying of its "chicken art" logo. In earlier briefing, Plaintiff clung to its incredulous claim that Wing Snob's owner verbally stated "we're going to copy your business" as evidence of direct copying of its "chicken logo." (**ECF No. 10**). In response, Defendants presented several arguments to the Court demonstrating Plaintiff's claims were meritless, including Mr. Shunia's testimony that he never rendered such a statement. (**ECF No. 20, PageID.187-189**). The Court agreed, and in denying Plaintiff's Motion for Preliminary Injunction indicated that "a general comment that Defendants would open a business similar to Plaintiff's is not direct evidence that Defendants copied Plaintiff's chicken logo." (**ECF 44, PageID.566**). At present, no other evidence of direct, intentional copying of the "chicken art" logo exists.

### ii. Circumstantial evidence of copying does not exist.

If anything, Plaintiff is forced to rely on circumstantial evidence of copying, proving that Defendants somehow had *access* to Plaintiff's secondary logo, but which Plaintiff fails to do. As discussed in *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp*, 361 F.3d 312, 316 (6th Cir. 2004), "a mere assertion of

access, unsupported by probative evidence is inadequate." Plaintiff previously argued that the "chicken art" logo is widely advertised, thus creating access, but has not provided sufficient evidence in support. In response, Defendants previously presented evidence that the "chicken art" logo did not appear to be widely used, whether on DWC stores (save for Eastpointe), in its menus, on its website, or otherwise. *See* **ECF No. 20-2**, comparing images of the Eastpointe location between 2018 and 2019. It appears that only recently was this "chicken art" logo placed on the storefront. Likewise, it appears that no other DWC locations "prominently display" the "chicken art" logo as Plaintiff previously argued. *Id*. Finally, it is well established Wing Snob's "chicken-art" sweatshirt was designed by a third-party design company (i.e., BrandIT) sometime around November 2019 and never sold. (**ECF No. 20-2**, **¶ 6**). No evidence has been presented that BrandIT, an out-of-state business, had knowledge or awareness of, or access to, Plaintiff's "chicken art" logo.

Mr. Shunia testified Defendants learned about Plaintiff's chicken logo after the lawsuit was filed. (**ECF No. 60-1,** pp. 108-109). He further testified only approximately 12 sweatshirts were created and none were sold. *Id*. He further testified the "chicken art" was not used for any other Wing Snob marketing. *Id*. Neither he nor his business partner Mr. Mashini communicated with agents of BrandIT to design the sweatshirt at issue. *Id*. at pp. 53-54. Beyond this evidence, which supports the finding that Defendants did not commit copyright infringement,

no evidence has been presented that Defendants communicated with BrandIT concerning the design of the sweatshirt. Because Plaintiff cannot show direct or circumstantial evidence of copyright infringement, its claim fails as a matter of law.

### iii. The "chicken logos" are not substantially similar.

Lastly, even if Plaintiff could establish access, or circumstantial evidence of copying, it would still need to establish substantial similarity. And even if Plaintiff were to rely on case law in cases of "striking similarity," which it cannot, "absent copying, there can be no [copyright] infringement." *Mazer v. Stein*, 347 U.S. 201, 218 (1954). As set forth herein, and in prior briefing, Plaintiff cannot demonstrate Defendants copied the "chicken art" logo. Nonetheless, the "chicken art" logos at issue are not substantially similar. A brief review of each logo demonstrates more dissimilarities than similarities, especially with respect to the design of the chicken itself, the word-art used (i.e., different sauce names), colors used, and overall theme and style of each logo. For these additional reasons, Plaintiff's copyright infringement claim fails as a matter of law and must be dismissed.

## V. CONCLUSION

In consideration of the foregoing, dismissal of Plaintiff's Complaint is warranted. Defendants have illustrated the host of ways in which Plaintiff's claims fail as a matter of law, including with reference to the underlying evidentiary record, where no disputes of material fact exist warranting further litigation.

Moreover, the record sufficiently demonstrates that Plaintiff knew the facts prior to filing this case. It has relied upon the same tired, unsubstantiated accusations without producing any further evidence to support same. Plaintiff ignored Defendants' plea to voluntarily dismiss its meritless claims. (**Exhibit 3**). As in *Mattel, Inc. v. Walking Mountain Productions*, 2004 WL 145100 (C.D. Cal. 2004), Plaintiff had access to sophisticated counsel who could have determined that this suit was objectively unreasonable and frivolous, yet it insisted on forcing Defendant into costly litigation and continuing same beyond the bounds of reason and logic in the face of overwhelming evidence in favor of Defendants.

Accordingly, Wing Snob Inc. and Wing Snob Franchising, LLC pray that this Court dismiss Plaintiff's Complaint in its entirety awarding costs and attorney fees in their favor against Plaintiff pursuant to 15 U.S.C. § 1117(a) for having to defend such harassing and frivolous claims.

Respectfully submitted,

**ROSSMAN, P.C.**
*Attorneys for Defendants*

By:   /s/ Linda J. Roelans
      Mark C. Rossman (P63034)
      Linda J. Roelans (P82818)
      Jacob M. Campbell (P83900)
      2145 Crooks Road, Suite 220
      Troy, Michigan 48084
      Telephone:  248.385.5481
Dated:  February 11, 2021      linda@rossmanpc.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of the filing to all counsel of record.

By:   <u>/s/ Linda J. Roelans</u>
Linda J. Roelans (P82818)
2145 Crooks Road, Suite 220
Troy, Michigan 48084
Telephone:  248.385.5481
Facsimile:  248.480.4936
linda@rossmanpc.com

36