UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EASTPOINTE DWC, LLC d/b/a
DETROIT WING COMPANY,

        Plaintiff,                          No. 19-13768

v.                                         Hon. Nancy G. Edmunds

WING SNOB INC., and
WING SNOB FRANCHISING, LLC,

        Defendants.
_____/

**OPINION AND ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [71]**

Plaintiff Eastpointe DWC, LLC d/b/a Detroit Wing Company ("DWC") filed suit against Defendants Wing Snob Inc. and Wing Snob Franchising, LLC (collectively referred to as "Wing Snob"), bringing claims of trademark and trade dress infringement, unfair competition, and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as claims of trademark infringement and unfair competition under Michigan common law, unfair and deceptive trade practices under the Michigan Consumer Protection Act ("MCPA"), and copyright infringement under the Copyright Act, 17 U.S.C. §§ 101-1401.  (ECF No. 3.)  The Court previously denied Plaintiff's motion for preliminary injunction on its trade dress and trademark infringement and copyright infringement claims.  (ECF No. 44.)  The matter is now before the Court on Defendants' motion for summary judgment.  (ECF No. 71.)  Plaintiff opposes the motion.  (ECF Nos. 75, 76, 77.)  Defendants have filed a reply.  (ECF Nos. 84, 85.)  Plaintiff has also filed a supplemental brief, (ECF No. 98), which Defendants have responded to, (ECF No. 99).

The Court finds that the facts and legal arguments are adequately presented in the motions and briefs and that the decision process would not be significantly aided by oral argument.   Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendants' motion will be resolved without oral argument.   For the reasons discussed below, the Court DENIES IN PART and GRANTS IN PART Defendants' motion for summary judgment.

## I.    Background

Plaintiff opened its first restaurant, specializing in chicken wings, in the Detroit area in 2015.  (ECF No. 10-2.)  In 2017, Defendants' owners, Brian Shunia and Jack Mashini, approached Plaintiff regarding whether it would consider selling franchises.  They were given a tour by Gus Malliaras, but Plaintiff indicated it was not interested in selling franchises and declined the offer.  After finding an old pizza shop in Livonia, Mr. Shunia once again approached and asked Plaintiff if it would be interested in selling a franchise, but Plaintiff declined.  Several weeks later, Mr. Shunia contacted Plaintiff for a third time.  According to Plaintiff, Mr. Shunia stated that he signed a lease and was moving forward with opening a similarly-themed, chicken wing restaurant.  He asked Plaintiff if it would be its consultant, but Plaintiff refused to help him.  According to Mr. Malliaras' affidavit, "after [he] declined to assist Mr. Shunia, he told [him] he was just going to open a similar chicken wing restaurant."   *See id.*   Mr. Malliaras understood this to mean that "he was going to intentionally copy [Plaintiff]'s business."   *Id.*

Discovery has revealed that on the same day of the tour, earlier in the day, Mr. Shunia had sent a message to John Tiley, who owns and operates the branding and advertising company utilized by Defendants, informing him that "We're gonna start from

scratch.  Need, menu design, logo design, website, online ordering . . . ."  (ECF No. 76, PageID.2397.)   Along with this message was a picture of a handwritten menu that matched Plaintiff's wing items and prices.  Later that day, after the tour, Mr. Shunia texted Mr. Tiley, stating "going with the wings menu concept.  Period."  (*Id*. at PageID.2410.)

After Defendants opened their first location, Mr. Malliaras visited it with his marketing agent.  (ECF No. 10-2; *see also* ECF No. 10-3.)  They state that they noticed the same colors, similar logos, and similar horizontal wood slats on the wall.  They further state that they heard Defendants' owner tell a customer that all of Defendants' sauces were made from scratch, but after the customer left, Mr. Shunia admitted that he does not make the sauces from scratch but rather uses bottled sauces.  Plaintiff also states that they noticed that Defendants had copied its menus, its menu's trade dress, and its online ordering method.

Mr. Shunia has testified that although he met with Mr. Malliaras and toured his restaurant, he "never represented to him an intent to copy his business in any way."  (ECF No. 20-2; *see also* ECF No. 60-1, PageID.1238.)  He also states that the current four Wing Snob locations are in rented spaces and therefore Defendants did not design the exterior.  He also attests that the chicken art logo was designed by a third party prior to Plaintiff filing its copyright application, and that Defendants in fact had no prior knowledge of this chicken logo until the filing of this lawsuit.  Mr. Shunia also states that Mr. Tiley designed the Wing Snob circular logo.  Mr. Shunia notes the differences between the logos as well as the interior décor of the restaurants.

Plaintiff alleges that customers were and continue to be confused about whether Plaintiff is affiliated with Defendant.  In support of this assertion, Plaintiff cites to

statements from Plaintiff's principal, Mr. Malliaras, as well as store owners describing instances of confusion.  Employees have also indicated there were instances during which food delivery workers came to Plaintiff's restaurant and asked for food orders that were made for Defendant's restaurants. (ECF No. 22-3.)  Another employee interacted with two customers who expressed confusion between the two.  (ECF No. 22-4.)  There are also social media posts from confused customers.  (ECF No. 36.)  For example, in one tweet, an individual asked, "So wing snob and Detroit Wing Company is the same thing?"

The logos at issue are the following:

Plaintiff's circular logo:          Defendants' circular logo:



Plaintiff's chicken logo:          Defendants' chicken logo:



Plaintiff's trademark for its circular logo was registered on November 24, 2020. (ECF No. 75-2, PageID.2289.)   And Plaintiff's trademark for its chicken logo was registered on June 1, 2021.   (ECF No. 98-2, PageID.2833.)   Plaintiff's copyright in its chicken logo was registered on December 9, 2019.   (ECF No. 3-1.)

As the basis for its false advertising claim, Plaintiff points to a Facebook posting in which Defendants state they offer "Famous house made Sauces" and "24hr marinated chicken."   Plaintiff notes that according to the testimony, Defendants do not make their sauces from scratch, as it does, nor do they marinate their chicken for twenty-four hours.

## II.   Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"   *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"   *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'"   *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).   "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues

sufficient to allow a jury to return a verdict in its favor.'"  *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

While the Court previously denied Plaintiff's motion for preliminary injunction, this does not necessarily demonstrate that Defendants are entitled to summary judgment. *See McNeilly v. Terri Lynn Land*, 684 F.3d 611, 615 (6th Cir. 2012) ("The proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction is an extraordinary remedy.") (internal quotation marks and citation omitted).

III.    **Analysis**

Defendants move for summary judgment on all of Plaintiff's claims.  Plaintiff argues there are genuine issues of material fact that preclude summary judgment.

   A.    **Trade Dress and Trademark Infringement and Unfair Competition under the Lanham Act and Michigan Common Law (Counts I, II & IV)**

The Court will first address Plaintiff's trade dress and trademark infringement and unfair competition claims.  To recover for trade dress infringement, a plaintiff must prove: "1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).  "The first two elements are the requirements for protectability, and the third element is the standard for evaluating infringement."  *Id.*  Liability on the trademark infringement claim similarly depends on "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir.

1997).  And while an unfair competition claim does not require the use of the plaintiff's trademark, the same likelihood of confusion test applies to that claim.  *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002).  This same test also applies to Michigan's common law claims, *see Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983); thus, the federal and state claims will be discussed together.

While the Court previously found that Plaintiff had failed to establish a *strong* likelihood of success in proving its trade dress and trademark infringement claims sufficient to warrant the extraordinary remedy of a preliminary injunction, the question before the Court is whether Defendants are entitled to judgment as a matter of law.  In other words, if the evidence is such that a reasonable jury could return a verdict for Plaintiff, Defendants' motion must be denied.

### 1.    Protectability of Trade Dress

"Trade dress is the total image of the product, including all its identifying characteristics such as size, shape, package, and sale techniques, which make it distinguishable from the other products in the market."  *Happy's Pizza Franchise, LLC v. Papa's Pizza, Inc.*, No. 10-15174, 2013 U.S. Dist. LEXIS 10130, at *7 (E.D. Mich. Jan. 25, 2013) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992)). Distinctiveness of trade dress may be inherent or demonstrated by secondary meaning. *Abercrombie & Fitch Stores*, 280 F.3d at 635.  Trade dress is inherently distinctive when its "'intrinsic nature serves to identify a particular source.'"  *Id.* at 635 (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982)).  It acquires secondary meaning when, "'in the minds of the public, the primary significance of a mark or dress is to identify the source of the product rather than the product itself.'"  *Id.*  Under a test

formulated by the Second Circuit, trade dress is inherently distinctive when it is "arbitrary ('Lucky Strike cigarettes'), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent)." *Id.* at 635 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976)).  However, trade dress that is descriptive or generic is not inherently distinctive.  *Id.* at 635-36.  Although descriptive trade dress receives protection if it acquires secondary meaning, generic trade dress cannot.  *Id.*  While the Supreme Court held that this test regarding distinctiveness applies to product packaging trade dress, the "interior décor category fits awkwardly into the classifications of trade dress law, constituting either product packaging or a 'tertium quid' akin to product packaging."  *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d 60, 70 (S.D.N.Y. 2003).  Both the distinctiveness categorization and the existence of secondary meaning are questions of fact.  *See Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1560 (11th Cir. 1991).

In its response to Defendants' motion, Plaintiff describes its trade dress as its "logos, a unique color palette (orange, black and white, where the black is sometime dappled), barnwood interiors that are unusual in the wing business, and ledgestone exteriors," as well as its "wing-focused menu with limited other items like coleslaw, cheesecake, and Faygo® as the beverage offering."  (ECF No. 75, PageID.2261.) Plaintiff asserts that its trade dress is inherently distinctive and non-functional.

In *Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130, at *11-12, the court drew a "distinction between arbitrarily selecting design elements that result in a unique and distinctive trade dress and arbitrarily selecting elements that result in nothing more than a generic design."  The court found the trade dress at issue there fell in the latter

category due in part to a lack of evidence that other restaurants did not use the same elements and that customers exclusively associated those elements and menu items with the plaintiff.  *See id.* at \*10.  The court found that the plaintiff had failed to establish distinctiveness because "[w]ithout the use of [the plaintiff]'s name and logo within the design or on the menu, there is nothing that would alert the average consumer that they are in a [plaintiff's] restaurant."  *See id.* at \*12.  Here, it appears that like in *Happy's*, without the use of Plaintiff's name and logos, there is nothing that would alert customers that they are in Plaintiff's restaurants.  But even if Plaintiff's trade dress is not inherently distinctive, it is protectable if it has acquired secondary meaning.

Plaintiff argues that its trade dress has acquired secondary meaning through years of use, advertising, and large sales.  Relevant factors to the question of whether secondary meaning exists in a trade dress are:  "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying."  *See General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418 (6th Cir. 2006).  While it does not appear there is any direct consumer testimony or consumer surveys in the record, there is some evidence with regard to the other factors.  For example, Plaintiff states it has advertised its trademarks and trade dress extensively and has provided evidence of some of those advertisements. (ECF No. 22-2.)  Plaintiff also points to the statement allegedly made by Mr. Shunia as proof of intentional copying.  While Mr. Shunia disputes making this remark and Defendants instead rely on the testimony of Mr. Tiley, who states that Mr. Shunia suggested using the "hunger colors," but he otherwise chose the name of Defendants'

restaurants and color scheme and designed the circular logo, credibility determinations are for the jury.  Thus, the Court finds there are material questions of fact as to whether Plaintiff's trade dress is protectable.

### 2.    Likelihood of Customer Confusion

In examining the likelihood of customer confusion for both trademark and trade dress infringement claims, the Sixth Circuit has identified the following factors which should be examined:  1) the strength of the plaintiff's mark (or trade dress), 2) relatedness of the goods, 3) similarity of the marks (or trade dress), 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) defendant's intent in selecting the mark (or trade dress), and 8) likelihood of expansion of the product lines. *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *Abercrombie & Fitch Stores*, 280 F.3d at 635.  "[T]hese factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely. . . .  The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores*, 109 F.3d at 280 (internal quotation marks and citation omitted). Whether there is a likelihood of confusion is a mixed question of fact and law. *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

With regard to the first factor, a trademark that has been registered for five or more years is considered strong and worthy of full protection.  *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1187 (6th Cir. 1988).  Here, Plaintiff's circular logo achieved federal trademark registration status less than one year ago—on November 24, 2020.  (ECF No.

75-2, PageID.2289.)  And Plaintiff's chicken logo was registered even more recently—on June 1, 2021.  (ECF No. 98-2, PageID.2833.)  However, "[t]he strength of a mark is generally the result of (1) its unique nature; (2) its owner's intensive advertising efforts; and (3) which of the four categories the mark occupies: generic, descriptive, suggestive or arbitrary/fanciful."  *Express Welding, Inc. v. Superior Trailers, LLC*, 700 F. Supp. 2d 789, 797-98 (E.D. Mich. 2010).  And here there is evidence in the record regarding Plaintiff's advertising efforts.

With regard to similarity of the trademarks, the circular logos are very different. Plaintiff's circular logo states "DWC" in orange, while Defendants' circular logo spells out the words "Wing Snob" in white.  Plaintiff's logo's background is black, while Defendants' logo's background is mostly gray.  The chicken logos, however, are more similar.  And with regard to the trade dress, a review of the pictures reveals there are some similarities, but the wood paneling used by Defendants is a different color and thinner than the paneling in Plaintiff's interior.  Also, while both use a black, orange, and white color scheme, Defendants also include gray.  Plaintiff only has word art within the chicken in its chicken logo with a black background.  Defendants no longer use their chicken logo and have the word art covering the entire surface of the wall on an orange background.

Plaintiff points to evidence of actual confusion in the form of affidavits and testimony from employees, stating that food delivery workers and customers have expressed confusion.  The record also includes several social media posts where customers appeared to be confused, thinking there was a DWC at a location where there was actually a Wing Snob.  (*See* ECF No. 36.)  While the court in *Happy's Pizza Franchise*, 2013 U.S. Dist. LEXIS 10130 at *14-15, found an employee affidavit

11

insufficient to establish the likelihood of confusion element as a matter of law, such statements are relevant to the question of whether there is a likelihood of confusion.  *See Wynn Oil*, 839 F.2d at 1188 (noting "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion").  Moreover, the evidence of confusion is more substantial here than it was in *Happy's* and although much of it lacks particularity, at least one incident indicates that potential customers were confused due to the similarity in the logos.  (*See* ECF No. 98-2.)

Plaintiff has also presented some evidence that goes to Defendants' intent in selecting their trade dress and logos, including a text message where Mr. Tiley acknowledges that he was told to "go check" Plaintiff's restaurant.  (ECF No. 75-3, PageID. 2313.)  The similarities in the color scheme and the paneling may also constitute circumstantial evidence of an intent to copy.  *See Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 511 (6th Cir. 2013).

Regarding the relatedness of the goods, both Plaintiff's and Defendants' restaurants sell fried chicken and wings.  While Defendants assert that to distinguish their products from an already-crowded field of restaurants that sell similar products, they also sell chicken sliders and cauliflower wings, Plaintiff states that Defendants' original menu was identical to its menu and also similarly offered Faygo® products.  (*See* ECF No. 22-2, PageID.272.)  And with regard to the likely degree of purchaser care, "the standard used by the courts is the typical buyer exercising ordinary caution."  *See Homeowners Grp.*, 931 F.2d at 1111.  Finally, both the likelihood of expansion of the product lines and the marketing channels used weigh in favor of a likelihood of confusion.

In sum, the Court finds there is enough evidence in the record to create genuine issues of material fact with regard to several of the *Frisch's* factors. Thus, the Court denies Defendants' motion for summary judgment as to Plaintiff's claims of trade dress and trademark infringement and unfair competition under both federal and state law.

**B.    False Advertising under the Lanham Act (Count III)**

Defendant argues Plaintiff lacks statutory standing for its Lanham Act false advertising claim. Alternatively, Defendants aver Plaintiff has not sufficiently pled the five elements of the claim.

To have statutory standing in a suit for false advertising under the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014). Moreover, a plaintiff must demonstrate its injuries are proximately caused by violations of the statute. *Id.* at 132. This requirement bars suits for alleged harm that is "too remote" from the defendant's unlawful conduct. *Id.* at 133. Thus, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* Defendants argue Plaintiff cannot meet either requirement of statutory standing. Plaintiff asserts that it is a direct competitor and therefore has standing but does not otherwise explicitly address the two requirements for statutory standing.

The Court agrees with Defendants that Plaintiff has not shown it has suffered from an economic or reputational injury that flows *directly* from the allegedly false statements

made by Defendants regarding their own sauces or marination of chicken.  Thus, the Court grants Defendants' motion as to this claim.

### C.  False Advertising under the MCPA (Count V)

Defendant argues that Plaintiff's MCPA false advertising claim is precluded by law, and that Plaintiff otherwise lacks standing to assert this claim.  The MCPA specifically provides that it does not apply to "[a] transaction or conduct specifically authorized under laws administrated by a regulatory board or officer acting under statutory authority of this state or the United States."  Mich. Comp. Laws § 445.904(1)(a).  Defendants argue that because false advertising of food products is explicitly prohibited by a number of federal laws, this exemption applies here.  The Court agrees.  *See White v. Medtronic, Inc.*, No. 18-11590, 2019 U.S. Dist. LEXIS 49259, at *16 (E.D. Mich. Feb. 20, 2019) (citing *Duronio v. Merck & Co.*, No. 267003, 2006 Mich. App. LEXIS 1841, at *21 (Mich. Ct. App. June 13, 2006) ("Because the general marketing and advertising activities underlying plaintiff's MCPA claim are authorized and regulated under laws administrated by the FDA, the exemption in MCL 445.904(1)(A) applies to plaintiff's MCPA claim")).  Thus, the Court grants Defendants' motion with regard to Plaintiff's MCPA claim.

### D.  Copyright Infringement (Count VI)

Finally, Defendants move for summary judgment on Plaintiff's copyright infringement claim.  To establish a claim of copyright infringement, Plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  The first element tests the originality and non-functionality of the work and is presumptively established by the copyright registration, and the second element tests

whether copying occurred and whether the portions of the work copied were entitled to copyright protection.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004).  A plaintiff may show copying "either by direct evidence of copying, or by proof that Defendants had access to the copyrighted work and that the copyrighted work and the infringement work are substantially similar."  *Wilcom Pty. Ltd. v. Endless Visions*, 128 F. Supp. 2d 1027, 1031 (E.D. Mich. 1998), *aff'd*, 229 F.3d 1155 (6th Cir. 2000) (internal quotation marks and citation omitted).

Here, Defendants do not dispute that Plaintiff owns a valid copyright in its chicken logo.  With regard to the second element of Plaintiff's copyright infringement claim, while there is no direct evidence Defendants copied that logo, the copyrighted logo and the infringing logo are similar and there is some evidence in the record that may give rise to an inference that Defendants had access to the copyrighted work.  More specifically, Mr. Malliaras testified that he gave Mr. Shunia and Mr. Mashini his business card, which contains the chicken logo, on the day of the tour.  (ECF No. 22-2, PageID.269-70.)  While Mr. Shunia denies this, credibility determinations are for the jury.  Plaintiff also avers that Defendants had access to the logo because it was displayed on Plaintiff's employees' uniforms and on the east side of the Eastpointe location when they were given a tour. Defendants have submitted photos that raise the question of whether the logo was present on the building at the time but do not argue the logo was not displayed on Plaintiff's employees' uniforms.  Because the Court finds there is sufficient evidence to

create a question of fact as to whether Defendants copied Plaintiff's chicken logo,[1] summary judgment on Plaintiff's copyright infringement claim is not appropriate.

## IV.    Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is DENIED IN PART and GRANTED IN PART.  More specifically, Plaintiff's trade dress and trademark infringement, unfair competition, and copyright infringement claims (Counts I, II, IV, and VI) survive this motion, while Plaintiff's false advertising claims (Counts III and V) are dismissed with prejudice.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 30, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

---

[1] It appears that the infringing logo was only used for the creation of one style of t-shirt that was only on sale for a few weeks, but this fact goes to damages, not liability.